**STATE OF LOUISIANA**        \*        **NO. 2018-KA-0877**

**VERSUS**        \*        **COURT OF APPEAL**

**ERIC YOUNGBLOOD**        \*        **FOURTH CIRCUIT**

        \*        **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 526-482, SECTION "D"
Honorable Paul A Bonin, Judge

\* \* \* \* \* \*

**JUDGE SANDRA CABRINA JENKINS**

\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

*BARTHOLOMEW-WOODS, J., CONCURS IN THE RESULT*

Leon Cannizzaro, District Attorney
Donna Andrieu, Assistant District Attorney
Scott G. Vincent, Assistant District Attorney
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

    COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Mary Constance Hanes
LOUISIANA APPELLATE PROJECT
P. O. Box 4015
New Orleans, LA 70178-4015

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**JULY 31, 2019**

Defendant, Eric Youngblood, was convicted of conspiracy to introduce contraband into a penal institution, a violation of La. R.S. 14:(26)402, adjudicated a third felony offender, and sentenced to twenty-seven years at hard labor without benefit of probation, parole, or suspension of sentence. In his sole assignment of error on appeal, defendant argues that the trial court imposed an excessive sentence. Based on our review of the record and applicable law, we find that the trial court adequately complied with sentencing guidelines and that the facts and circumstances warrant the sentence imposed. Accordingly, we affirm defendant's sentence.

## PROCEDURAL BACKGROUND

On September 24, 2015, defendant and two co-defendants, Aranton Johnson and Joshua Domino, were charged by bill of information with conspiracy to introduce contraband into a penal institution, a violation of La. R.S. 14:(26)402. On October 14, 2015, defendant and his co-defendants appeared for arraignment and entered pleas of not guilty.

On July 26, 2017, Joshua Domino withdrew his prior plea of not guilty; he pled guilty as charged to La. R.S. 14:(26)402; he also pled guilty to a multiple bill as a third felony offender; and he was sentenced to three years, four months at hard labor.

On August 7, 2017, the case against defendant and Aranton Johnson proceeded to a jury trial. At the conclusion of the four day trial, the jury found defendant guilty as charged, but found Aranton Johnson not guilty. Defendant filed motions for new trial and post-verdict judgment of acquittal, which were denied by the trial court. On October 3, 2017, the trial court sentenced defendant to 15 years at hard labor. Defendant subsequently filed motions to reconsider sentence and to correct illegal sentence that were denied by the trial court.

On November 9, 2017, the State filed a multiple bill charging defendant as a third felony offender based on two prior felony guilty pleas in 2012. The trial court held a multiple bill hearing on July 10, 2018.[1] The trial court found defendant to be a third felony offender, vacated his original sentence, and resentenced defendant to twenty-seven years at hard labor without benefit of probation, parole, or suspension of sentence.

This timely appeal followed.

### STATEMENT OF FACTS

Orleans Parish Sherriff's Deputy Chauncey Phillips testified that, in 2015, he worked at the Orleans Parish Prison, appointed to a certain tier or dorm to monitor and keep control of the tier and inmates. In June of 2015, defendant approached Deputy Phillips on the yard and attempted to engage in conversation

---

[1] Prior to the hearing, defendant re-urged his motions to reconsider sentence and to correct illegal sentence. The trial court declined to reconsider his rulings and proceeded with the multiple bill hearing.

2

about personal information. Deputy Phillips rebuffed defendant and told him to walk away. Later on, defendant approached Deputy Phillips a second time, expressed that he was stressed out, and offered to pay Deputy Phillips to bring contraband into the jail. After telling defendant that he was not interested and was not "that type of deputy," Deputy Phillips notified Sgt. Lance Wade, of the prison's Criminal Intelligence Division. Sgt. Wade then enlisted Deputy Phillips in an investigation of defendant's plan to get contraband into the jail.

Under Sgt. Wade's direction, Deputy Phillips wrote a note to defendant providing a price list for different items and instructing defendant to provide a contact and his order for contraband items. Defendant replied the same day with a note stating, "I'm about to give you 250 for the smokes. Her name is Key and her number is []. She get [sic] off at 7:30 p.m."

Under the direction of Sgt. Wade, Deputy Phillips arranged a meeting with the contact, Keyoka Motley, at the Brown Derby, located at the intersection of S. Jefferson Davis Pkwy and Tulane Ave. The location of the meeting was placed under surveillance and photographs were taken of the exchange. At the meeting, Motley gave Deputy Phillips a brown bag and paid him cash she retrieved from an automatic teller machine in the store. Deputy Phillips immediately took the bag to Sgt. Wade, who took photographs of the contents of the bag—nine pills identified as oxycontin and five packs of Bugler tobacco. After removing the oxycontin pills, Sgt. Wade instructed Deputy Phillips to leave the bag and its contents in a prison restroom where defendant could retrieve it. After Deputy Phillips placed the bag in the restroom, he told defendant where to find the package. Defendant went into the restroom, retrieved the package, put it in his jumpsuit, and walked out. At that time, Deputy Phillips escorted defendant to the watch office.

3

Deputy Phillips also testified about additional notes that he wrote defendant soliciting information about other prison guards who might be working with defendant. Some of the letters were delivered through another prisoner, defendant's cousin, Aranton Johnson, who told Deputy Phillips, "[e]verything go through me." But Deputy Phillips stated that he was confident that any note he gave to Johnson would be delivered to defendant.

Jim Huey testified as the custodian of records for the inmate phone system at Orleans Parish Prison. Huey explained how all jail calls are logged and recorded. He identified the call detail sheet for defendant, which provides all of the details from each of the calls, including the telephone number called, the date, time, and duration of the call. Huey also authenticated excerpts of nine recorded phone calls on defendant's call sheet. Those nine excerpts of recorded jail calls were played for the jury.

Sgt. Wade testified that a lot of the activities of the Criminal Intelligence Division involve intercepting contraband and investigating employee malfeasance within the Sheriff's Office. He stated that contraband posed safety issues for prisoners, prison staff, and the general public. He testified that in June and July of 2015, he conducted an investigation of defendant, Johnson, and Domino. As part of that investigation, Sgt. Wade instructed Deputy Phillips to communicate with defendant, provided Deputy Phillips with a burner cell phone, and conducted surveillance of the meeting and exchange between Deputy Phillips and Keyoka Motley. Sgt. Wade also conducted the search of defendant after he retrieved the bag of contraband from the restroom. The search was video recorded and shown to the jury during Sgt. Wade's testimony.

4

Sgt. Wade also testified that Keyoka Motley was listed as an approved visitor for defendant at the prison as "girlfriend/boyfriend." He stated that the phone number she provided in her visitor application was one of the phone numbers that called the burner cell phone Sgt. Wade provided to Deputy Phillips during the investigation into defendant. Sgt. Wade also confirmed that defendant made numerous jail calls to Motley's phone number. In one of those calls to Motley, which was played for the jury, defendant discussed smuggling contraband into the prison, including "some kind of prescription pain medication" and tobacco and a lighter. In a July 6, 2015 conversation, the woman on the phone call called defendant "Eric" and stated "I'm going to do it, Eric." On that same call, defendant can be heard saying, "I want Trams, Perc, s--- and bars." Sgt. Wade testified that "Trams" refers to Ultrams, "Perc" refers to Percocets, and "bars" refers to "Xan bars," which are all controlled dangerous substances. From hearing this jail call, Sgt. Wade understood defendant's order from Deputy Phillips would include narcotics. He also stated that subsequent jail calls corroborated that defendant's plan involved getting scheduled narcotics into the jail, including a recorded jail call statement by defendant, "I need everything I can get."

Corey Hall testified that he is a criminalist with the New Orleans Crime Lab. He identified the sealed evidence envelope containing nine pills and labeled with the police item number for this investigation. Hall testified that he performed the chemical test on the pills which tested positive for oxycodone.

When the State concluded its presentation of evidence and witnesses, neither defendant nor Johnson presented any witnesses or evidence. Following closing arguments and jury instructions, the jury retired to deliberate and, subsequently,

5

returned with a verdict finding Johnson not guilty and finding defendant guilty as charged.

## DISCUSSION

In his sole assignment of error, defendant asserts that his twenty-seven year sentence for conspiracy to introduce contraband into a penal institution is unconstitutionally excessive under the circumstances of his case. Defendant argues that the trial court failed to take into consideration ameliorative legislative amendments to the applicable penalty statutes that reflect a dramatic change in public attitude regarding appropriate sentences for drug offenses. For the following reasons, we find no merit in defendant's claim that the sentence imposed in unconstitutionally excessive.[2]

---

[2] The State contends that review of defendant's excessive sentence claim is precluded by his failure to file a motion to reconsider or to object to the sentence after the trial court resentenced defendant as a multiple offender. While the record reflects that defendant did not file a written motion to reconsider after the resentencing on July 10, 2018, our review of the transcript from the multiple bill hearing and sentencing on that date reflects the following colloquy:

THE COURT:
    Do you want to – Ms. Campbell, do you want to sort of make a pro-forma oral motion to reconsider right now so that –
MS. CAMPBELL:
    Sure.
THE COURT:
    --or do you want – I believe you set forth your –
MS. CAMPBELL:
    I think I'm okay.
THE COURT:
    I just don't want you to be left out there that, the last part of it, you never made your objection.
MS. CAMPBELL:
    No; no. I don't need to do a reconsideration on multi bill because I think we made the record.
THE COURT:
    I think you did too.
        *       *       *
THE MINUTE CLERK:
    Ms. Campbell, did you object to the sentence?
MS. CAMPBELL:
    Yes, I'm going to object. I'm sorry. I object to the sentence.

A sentence is unconstitutionally excessive when it imposes punishment grossly out of proportion to the severity of the crime, makes no measurable contribution to acceptable goals of punishment, or constitutes nothing more than needless infliction of pain and suffering. *State v. Turner*, 18-0326, p. 6 (La. App. 4 Cir. 11/28/18), 259 So.3d 1089, 1093-94; *State v. Smith*, 01-2574, p. 6 (La. 1/14/03), 839 So.2d 1, 4. Even a sentence imposed within statutory limits may still violate a defendant's constitutional right against excessive punishment. *State v. Lambert*, 15-0629, p. 22 (La. App. 4 Cir. 3/16/16), 191 So.3d 630, 644.

When reviewing a claim that the sentence imposed is unconstitutionally excessive, this Court must determine first whether the trial court adequately complied with the statutory guidelines in La. C.Cr.P. art. 894.1. *Turner*, 18-0326, p. 6, 259 So.3d at 1094. If we find adequate compliance with La. C.Cr.P. art. 894.1, then we must determine whether the sentence imposed is too severe in light of the particular facts of the case and history of the defendant, "keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged." *State v. Batiste*, 06-0875, p. 18 (La. App. 4 Cir. 12/20/06), 947 So.2d 810, 820 (quoting *State v. Landry*, 02-7671, p. 8 (La. App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239). On appellate review of the sentence imposed, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. *State*

---

We note the trial court's acknowledgment of the arguments preceding the multiple bill hearing in which defense counsel re-urged motions to reconsider and to correct an illegal sentence, and argued that the maximum sentence for defendant as a third felony offender would be five years. More importantly, this Court has found that an objection lodged after sentencing is sufficient to preserve the claim of constitutional excessiveness. *State v. Robair*, 13-0337, p. 8 (La. App. 4 Cir. 1/15/14), 133 So.3d 96, 102; *State v. Miller*, 00-0218, p. 8 (La. App. 4 Cir. 7/25/01), 792 So.2d 104, 111; *see also State v. Mims*, 619 So.2d 1059 (La. 1993). Given the defense counsel's arguments to the trial court prior to sentencing and the objection lodged after sentencing, we find that defendant's excessive sentence claim was preserved for review.

*v. Hackett*, 13-0178, p. 14 (La. App. 4 Cir. 8/21/13), 122 So.3d 1164, 1174 (quoting *Smith*, 01-2574, p. 7, 839 So.2d at 4). In consideration of the trial court's broad discretion, this Court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4.

Our review of the record in this case reflects that the sentence imposed was within statutory limits. Defendant was convicted of conspiracy to introduce contraband into a penal institution, in violation of La. R.S. 14:(26)402. At the time of the commission of his offense in 2015, and based on the evidence at trial that defendant conspired to introduce controlled dangerous substances, specifically oxycodone, into the jail, the applicable penalty provisions subjected defendant to a maximum sentence of 15 years for his conviction.[3] Thus, the original sentence imposed by the trial court of 15 years at hard labor was within the statutory limits. Furthermore, we note that at the original sentencing hearing on October 3, 2017, the trial court took into consideration defendant's criminal history which included 22 arrests; a 2006 conviction for three counts of possession of controlled dangerous substances; a 2007 conviction for possession of cocaine; a 2009

---

[3] At sentencing, the trial court noted that the contraband in this case included oxycodone; and, relative to controlled dangerous substances, La. R.S. 14:402, provides, "[t]he introduction by a person of any controlled dangerous substance as defined in R.S. 40:961 et seq., upon the grounds of any municipal or parish prison or jail shall constitute distribution of that controlled dangerous substance and shall be subject to the penalties provided in R.S. 40:961 et seq." La. R.S. 14:402(E)(5). The penalty provision of the statute further provides that, "[n]otwithstanding any other law to the contrary, whoever introduces contraband as defined in … Paragraph (E)(5) of this Section, upon the grounds of any municipal or parish prison or jail, shall be punished in accordance with the penalties for the distribution of the controlled dangerous substance provided in R.S. 40:961 et seq." La. R.S. 14:402(G). At the time of the commission of the offense in 2015, the applicable penalty provision for distribution of oxycodone, pursuant to La. R.S. 40:967(B)(4)(b), provided for a sentence of "imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence." Finally, La. R.S. 14:26, relative to conspiracy, provides that a person convicted of conspiracy to commit any crime shall be fined or imprisoned in the same manner as for the offense contemplated by the conspirators, except that "such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for such offense, or both." La. R.S. 14:26(D). Based on all of the applicable penalty provisions in effect at the time of the commission of his offense, defendant was subject to an original sentence of zero to 15 years at hard labor.

8

conviction for possession of a firearm by a felon; a 2010 conviction for possession with intent to distribute marijuana and possession of a firearm by a felon; and pending charges for second degree murder and aggravated burglary.

As a third felony offender, pursuant to the provisions of La. R.S. 15:529.1A(3) in effect at the time of the offense, defendant faced a sentence of "not less than two-thirds of the longest possible sentence prescribed for a first conviction and not more than twice the longest possible sentence prescribed for the first conviction." Accordingly, as applied to defendant, the statute provided for a minimum sentence of 10 years and a maximum sentence of 30 years. Thus, the twenty-seven year sentence imposed by the trial court is within the statutory limits in effect at the time.

When sentencing defendant as a third felony offender, the trial court stated for the record the considerations taken into account and the factual basis for the twenty-seven year sentence imposed. *See* La. C.Cr.P. art. 894.1(C). The trial court noted that the evidence presented at trial revealed defendant to be the ringleader of the conspiracy to introduce the contraband into the jail; noted the serious threat posed by bringing drugs into the jail; noted that defendant enlisted his girlfriend, the mother of his children, in his crime and, thereby, put her at tremendous risk of criminal charges and losing her children; and noted defendant's criminal history, his prior convictions, and the fact that he was not deterred from further criminal activity even while awaiting trial on pending felony charges. Thus, based on our review of the record, we find the trial court adequately complied with the sentencing guidelines of La. C.Cr.P. art. 894.1 and considered the particular facts of the case and history of this defendant in imposing sentence.

9

Although defendant concedes that the twenty-seven year sentence imposed by the trial court is within the statutory limits in effect at the time of his offense, he argues that it is shocking and excessive when considered in light of the current penalty provisions, enacted by 2017 La. Acts Nos. 281, §2; 282, §1. Under the current penalty provision applicable to a conviction for La. R.S. 14:(26)402, involving the controlled dangerous substance oxycodone, the sentencing range for a first conviction would be zero to five years imprisonment with or without hard labor. *See* La. R.S. 14:402(G); La. R.S. 40:967(B)(1)(a); La. R.S. 14:26(D). In addition, under the amended provisions of La. R.S. 15:529.1(A)(3)(a), a third felony offender shall be sentenced to not less than one-half the longest possible sentence and not more than twice the longest possible sentence for a first conviction. Thus, under the amended penalty provisions applicable to defendant's conviction and third felony offender status, the statute now provides a sentencing range of two and a half years to ten years. Defendant argues that these amended penalty provisions reflect a dramatic change in the public attitude regarding appropriate sentences for drug offenses; and, in light of that dramatic change, he argues that the twenty-seven year sentence imposed by the trial court is unconstitutionally excessive.

In light of well-settled jurisprudence and the trial court's consideration of the facts and history of this defendant, we find no merit to defendant's argument. "[I]t is generally settled that the law in effect at the time of the commission of the offense is determinative of the penalty which is to be imposed upon the convicted accused." *State v. Parker*, 03-0924, pp. 9-10 (La. 4/14/04), 871 So.2d 317, 322. "The mere fact that a statute may be subsequently amended, after the commission of the crime, so as to modify or lessen the possible penalty to be imposed, does not

extinguish liability for the offense committed under the former statute." *State v. Sugasti*, 01-3407, pp. 4-5 (La. 6/21/02), 820 So.2d 518, 520 (quoting *State v. Narcisse*, 426 So.2d 118, 130-31 (La. 1983)). The well-settled jurisprudence of the Louisiana Supreme Court establishes that while ameliorative changes in the penalty provision of a statute should be considered as a factor in deciding an appropriate punishment, the trial court "should not derogate from the penalty provision in effect at the time of the commission of the offense." *Sugasti*, 01-3407, p. 5, 820 So.2d at 521 (citing *State v. Clark*, 391 So.2d 1174 (La. 1980)); *see Parker*, 03-0924, pp. 16-17, 871 So.2d at 326-27 (reaffirming its holding in *Sugasti* and finding defendant should be punished pursuant to the provisions of the habitual offender statute in effect at the time of the offense and prior to the ameliorative changes made by the legislature). In this case, the trial court imposed a sentence falling within the statutory sentencing range in effect at the time of the commission of defendant's offense. Furthermore, the sentence imposed for defendant's conviction for conspiracy to introduce contraband into a penal institution as a habitual offender is in line with this Court's jurisprudence regarding convictions for distribution of Schedule II controlled dangerous substances, pursuant to La. R.S. 40:967(B).[4] *See Turner*, 18-0326, 259 So.3d 1089 (affirming defendant's twenty-five year sentence for distribution of cocaine as a third felony offender); *State v. Harvey*, 08-0217 (La. App. 4 Cir. 5/13/09), 12 So.3d 496 (affirming defendant's sixty-year sentence for distribution of cocaine as a second felony offender); *State v. Williams*, 05-0176 (La. App. 4 Cir. 5/3/06), 932 So.2d 693

---

[4] As previously noted, the applicable penalty provision of La. R.S. 14:402(G) provides "whoever introduces contraband as defined in … Paragraph (E)(5) of this Section, upon the grounds of any municipal or parish prison or jail, shall be punished in accordance with the penalties for the distribution of the controlled dangerous substance provided in R.S. 40:961 et seq." (emphasis added)

(affirming defendant's life sentence for distribution of cocaine as a third felony offender); *State v. Wilson*, 04-1156, unpub. (La. App. 4 Cir. 11/23/04), 888 So.2d 1169 (affirming defendant's forty-year sentence for distribution of cocaine as a third felony offender).

Finally, as noted by the trial court in imposing sentence, the record reflects defendant's recidivist history, including six prior felony convictions, and the fact that defendant was awaiting trial for a violent felony offense when he committed this offense from inside the jail. "A defendant with multiple felony convictions is treated as a recidivist who is to be punished for his instant crime in light of his continuing disregard for the law." *Hackett*, 13-0178, p. 15, 122 So.3d at 1175. Based on our review of the record, we find defendant has failed to show that he is exceptional or that he is a victim of the legislature's failure to assign sentences meaningfully tailored to his culpability, the gravity of his offense, and circumstances of his case. *See Turner*, 18-0326, p. 10, 259 So.3d at 1096; *State v. Johnson*, 97-1906, p. 8 (La. 3/4/98), 709 So.2d 672, 677. Consequently, we find no abuse of the trial court's broad sentencing discretion and no merit to defendant's argument that the twenty-seven year sentence imposed by the trial court is unconstitutionally excessive under the circumstances.

We also find no merit to defendant's contention that the trial court misunderstood the maximum sentencing range under the habitual offender statute. During the trial court's resentencing of defendant as a third felony offender, the trial court stated its considerations in determining the appropriate sentence and then stated, "[s]o with all of that in mind and my view of the law is that the maximum sentence is 37 years[,] I sentence you to serve 27 years in the custody of the Department of Corrections, credit for all time served." While we acknowledge

the trial court's misstatement of the maximum sentence, from our review of the transcripts of the original sentencing and the multiple bill hearing and sentencing, we find the trial court understood that the maximum original sentence for defendant's conviction was fifteen years and that, pursuant to La. R.S. 15:529.1(A)(1)(3), the maximum sentence as a third felony offender was not more than twice that for the first conviction, or 30 years. Therefore, we find no error in the trial court's sentencing and no basis to remand this matter for clarification. Defendant's arguments are without merit.

## CONCLUSION

Finding no merit in defendant's sole assignment of error on appeal, we affirm defendant's conviction, habitual offender adjudication, and twenty-seven year sentence as a third felony offender.

**AFFIRMED**